Raymundo P. MADRID, Appellant,

v.

The STATE of Texas, Appellee.

No. 60116.

Court of Criminal Appeals of Texas,
Panel No. 3.

Oct. 31, 1979.

Rehearing Denied March 19, 1980.

Raymond C. Caballero, El Paso, for appellant.

Steve W. Simmons, Dist. Atty. and Paul J. Kubinski, Asst. Dist. Atty., El Paso, Robert Huttash, State's Atty., Austin, for the State.

Before DALLY, W. C. DAVIS and CLINTON, JJ.

OPINION

W. C. DAVIS, Judge.

Appeal follows a conviction for possession of heroin where punishment was enhanced by two prior felony convictions and assessed at life imprisonment. We affirm.

In his initial ground of error, appellant attacks both the validity and execution of the search warrant whereby police officers discovered the heroin. Appellant argues that the heroin seized pursuant to the search warrant should have been suppressed. However, after a hearing directed toward suppression, the trial court permitted the heroin to be introduced as evidence.

In attacking the validity of the search warrant, appellant argues: (1) that the warrant does not "run in the name of 'The State of Texas.'" Article 18.04(1), Vernon's Ann.C.C.P. and (2) that the description of the place to be searched was general and ambiguous and is therefore unreasonable. Amendment Four, U.S.Const.; Article 18.04(2), Vernon's Ann.C.C.P. With these propositions we cannot agree.

■ The face of the search warrant and affidavit of probable cause both set forth the authority of "The State of Texas" sufficiently to meet the requirements of Article 18.04(1), Vernon's Ann.C.C.P.

■ Concerning the description of the place to be searched, we first note that the description in the probable cause affidavit controls the description in the search warrant. *Riojas v. State*, 530 S.W.2d 298 (Tex. Cr.App.1975). At least nine times in that affidavit the apartment at 4610 Alberta # 3 is listed. Such a listing of the address is sufficient, and specifically describes the place to be searched. *Faulkner v. State*, 537 S.W.2d 742 (Tex.Cr.App.1976). Appellant seems to suggest that since the confidential informant only observed heroin in two specific places in the apartment, then the warrant should be limited to a search of those two places.[1] In *Riojas*, supra, the probable cause affidavit stated the contra-

---

1. The informant in the probable cause affidavit relates to having seen heroin in the kitchen of the apartment and further stated that a female occupant of the apartment carried heroin in her bra.

band was located in a shoe box; however, we held that a search of the entire residence was permitted under such circumstances. The same reasoning should and does apply here.

■ We also hold the execution of the search warrant was in compliance with Article 18.06(b), Vernon's Ann.C.C.P. Testimony from the police officers who executed the warrant revealed that officers identified themselves and read the search warrant to several persons who were present. Appellant adduced testimony that conflicted with that of the police officers; however, we find no abuse of discretion in the trial court's resolution of these conflicting testimonies in the suppression hearing.

■ Appellant's second ground of error complains of the use of a 1954 conviction for enhancement purposes. Appellant claims that his guilty plea in the 1954 conviction could not be used for enhancement because the records in that case did not show a waiver of the right to counsel. There was no sworn testimony concerning the 1954 conviction; however, the record contains the docket sheet of the trial court in the 1954 cause which shows appellant to have been represented by counsel. The "form" judgment and sentence in the 1954 cause do not recite that appellant waived counsel; however, with the docket sheet a presumption of regularity arises and appellant failed to overcome that presumption. *Allison v. State*, 479 S.W.2d 674 (Tex.Cr. App.1972).

■ In his third ground of error appellant urges error by the action of the trial court in failing to grant a mistrial. Six different issues are discussed under this one ground of error and thus, this ground of error is multifarious. Article 40.09(9), Vernon's Ann.C.C.P.; *Livingston v. State*, 542 S.W.2d 655 (Tex.Cr.App.1976). Further, none of the issues requires review in the interest of justice.

Appellant's final ground of error directs us to his insanity defense and the "presumption of sanity." Appellant timely gave notice that his defense to the charge

of possession of heroin would be insanity. The appellant's psychiatrist stated he had not examined appellant and thus, could not express an opinion on mental defects. The alleged error arose when the prosecutor was permitted to argue concerning the burden of proof on the issue of insanity as follows:

"MR. ELLIS (PROSECUTOR): * * * Remember that the defendant was and *is* presumed to be sane until you say definitely by your verdict. And I don't have the slightest burden in the world imposed on me in that respect. Now how did the defendant—

MR. CABALLERO (APPELLANT'S ATTORNEY): Judge, I object to any mention of presumptions, those presumptions have vanished at the point I submitted evidence of insanity and my burden is only to prove insanity by a preponderance of the evidence. * * * It is an improper remark and not the law.

THE COURT: I will refer the ladies and gentlemen of the jury to the charge, and overrule your objection.

MR. ELLIS: Look in the charge. The defendant must prove an affirmative defense by the preponderance of the evidence. Why does the defendant have to prove something, if it is not the case, because it is presumed to be the other way around.

MR. CABALLERO: Judge, I object to that. There is not a word presumption in the charge anywhere. That presumption is not given to the jury and I object to counsel arguing about a presumption that no longer exists.

THE COURT: I will refer the jury to the charge and overrule your objection.

MR. ELLIS: Let me draw an analogy that I am sure Mr. Caballero won't quarrel with. The presumption of innocence, the defendant is presumed to be innocent until the State proves him guilty.

MR. CABALLERO: Judge, I object to that. The presumption of innocence is in the charge and the presumption of insanity is not. That is improper argument.

THE COURT: Overruled, sir."

Further light is shed on the position of the parties and the trial court by the following:

"MR. CABALLERO: I don't want any mention that he is presumed sane because that is not the case, he is presumed sane until I put some evidence in and you submit the issue to the jury and then the presumption is gone.

MR. ELLIS: Your Honor, the State takes issue with the last statement of counsel.

THE COURT: I will reconsider. I don't think it is improper argument. It is not different from where you say a defendant is presumed to be innocent until his guilt is established by legal evidence beyond a reasonable doubt. * * *

MR. CABALLERO: The presumption of innocence remains with the person, whereas the presumption of insanity does not.

THE COURT: I think it does until overcome by a preponderance of the evidence.

MR. CABALLERO: Once you submit the issue to the jury you have already made that determination and it is in issue.

THE COURT: We are just talking about words of argument as I understand it, I see no reason to prohibit the State from stating that in his summation of the case if he so wishes."

The term presumption is misused almost as often as it is used. This misuse is discussed in McCormick on Evidence, 2d edition, sec. 342 at 802, as follows:

"One ventures that 'presumption' is the slipperiest member of the family of legal terms, except its first cousin, 'burden of proof.' One author has listed no less than eight senses in which the term has been used by the courts." Citing Laughlin, In Support of the Thayer Theory of Presumptions, 52 Mich.L.Rev. 195, 196–207 (1953).

This verbal confusion is compounded by the general guidance afforded by 1 Texas Practice, McCormick and Ray, Evidence, 75, sec. 57:

"The *Presumption of Sanity*, like many other so-called presumptions, serves only to guide the trial court in locating the *burden of proof* at a particular time."

Thus, the problem presented involves the two most misused and perhaps misunderstood terms in the legal vocabulary. Resolving the confusion is the task presented squarely by this record.

As with any legal issue, the first step toward resolution must be a definition of terms. Black's Law Dictionary, revised fourth edition, defines presumption as:

"A rule of law that courts and judges shall draw a particular inference from a particular fact, or from particular evidence, unless and until the truth of such inference be disproved."

McCormick's on Evidence, 2nd edition, sec. 342 at 803 defines presumption as:

"A standardized practice, under which certain facts are held to call for uniform treatment with respect to their effect as proof of other facts."

These two sources defined the "true presumption" and clearly require proof of certain facts from which another fact may be inferred. In other words, "true presumption" describes the situation wherein proof of fact A permits an inference as to the existence of fact B. The example that readily comes to mind is the presumption of intoxication used in connection with the administration of a chemical breath test. If the defendant registers a blood-alcohol content of .010% or greater on the "breathalyzer" instrument, then he is presumed intoxicated. Here, the results of the test, having been established (fact A), the legal inference is that the defendant is intoxicated (fact B).

A "true presumption" serves minimally to shift the burden of producing evidence from one party to another in civil cases. The party against whom the presumption operates in a civil cause of action must produce rebuttal evidence or risk a preemptory ruling or instruction from the trial court. A "true presumption" cannot have this effect in a criminal case. No amount of evidence produced by the State can force the defendant to produce evidence or suffer an instructed verdict. Such a rule flies in the face of a defendant's constitutional right to remain silent and have the State prove his guilt. By example, if the State adduces

evidence that a defendant registered .012% on a chemical breath test, the defendant has no obligation or burden to produce evidence. The effect of "true presumptions" in criminal cases is that the jury may accept or reject the presumption of fact even in the face of no contrary evidence. See McCormick on Evidence, 2nd edition, sec. 342, et seq. Therefore, the procedural effect of a "true presumption" differs in civil and criminal causes and the reasoning of one area may not be applicable to the other.

The criminal law is complicated by the terms "presumption of innocence" and "presumption of sanity," neither being a true presumption as defined above. The so-called presumption of innocence is not an inference based on proven fact; rather, it is an assignment of a burden of proof prior to trial based on the substantive law requiring the State to prove guilt beyond a reasonable doubt. The presumption of innocence enters the courtroom with the defendant in each case. Its existence does not depend upon proof of a fact; rather, it is a "shorthand" substitute for substantive criminal law.

Likewise, the presumption of sanity is not a true presumption at all. It is not an inference drawn from facts adduced but, rather, it is a rule of substantive law.

"An example of such a rule of law mislabeled a presumption is the 'presumption of sanity' as it operates against the defendant in a criminal case. The so-called presumption is simply a rule stating that the defendant has the burden of producing evidence (or of proving) his sanity at the time of the offense. *The use of the term presumption is only confusing.*" (Emphasis added) McCormick on Evidence, 2nd edition, sec. 346 at 830.

Therefore, the "presumption of sanity" is merely a rule fixing the burden of persuasion and is a correlative of the affirmative defense of insanity.

This rather lengthy discussion has been necessitated by the arguments and objections made by appellant's counsel to the argument of the prosecutor on the "presumption of sanity." Those objections treat the presumption of sanity as a true presumption. As before stated, the presumption of sanity is not a true presumption at all; rather, it is a substantive rule of law. Therefore, appellant's arguments and objections are of little benefit.

The controlling issue, and one of first impression in this jurisdiction, according to my research, is the effect of evidence of insanity on the presumption of sanity. Once the appellant has introduced some evidence of insanity, does the "presumption of sanity" vanish or may the jury consider the presumption in conjunction with the evidence adduced? The answer to this question is best derived by first examining the nature of the defense of insanity.

By statute, insanity is an affirmative defense, V.T.C.A. Penal Code, Sec. 8.01(a). Affirmative defenses are also controlled by statute. V.T.C.A. Penal Code, Sec. 2.04 provides:

"(b) The prosecuting attorney is not required to negate the existence of an affirmative defense in the accusation charging commission of the offense.

(c) The issue of the existence of an affirmative defense is not submitted to the jury unless evidence is admitted supporting the defense.

(d) If the issue of the existence of an affirmative defense is submitted to the jury, the court shall charge that the defendant must prove the affirmative defense by a preponderance of evidence."

See also Art. 46.03, V.A.C.C.P. The practice commentary following V.T.C.A. Penal Code, Sec. 2.04 is also illuminating:

"Although there are constitutional due process limitations on the imposition of a burden of proof on a criminal defendant, *Morrison v. People of State of California*, 54 S.Ct. 281, 291 U.S. 82, 78 L.Ed. 664 (1934), the imposition is justified in a few situations, e. g., *Leland v. Oregon*, 344 U.S. 848, 73 S.Ct. 4, 97 L.Ed. 659 (1952). "Two of the procedural and evidentiary consequences of an affirmative defense

are the same as those of a defense: state need not negate the defense in the accusation, Subsection (b), and there must be evidence in the case to warrant submitting the defense to the jury. Subsection (c)."

On the issue of insanity then, the appellant has both the burden to produce and the burden to persuade by a preponderance. Once the appellant has accepted these burdens and adduced evidence, then sanity becomes an issue. However, it does not follow that by making sanity an issue of proof, the appellant has shifted any burden of persuasion to the State.

Further, the "presumption of sanity" does not disappear when a defendant raises the insanity defense. Being a substantive rule of law, this "presumption" is available for jury consideration and may be accepted or rejected by the jury. The Supreme Court wrote on this issue:

"If the whole evidence, *including that supplied by the presumption of sanity*, does not exclude beyond reasonable doubt the hypothesis of insanity, of which some proof is adduced . . ." (Emphasis added) *Davis v. U. S.*, 160 U.S. 469, 16 S.Ct. 353, 40 L.Ed. 499 (1895); accord, *Howard v. U. S.*, 232 F.2d 274 (5th Cir. 1956); *Lee v. U. S.*, 91 F.2d 326 at 330–331 (5th Cir. 1937).

The "presumption of sanity," therefore, is available as a substantive rule of law for jury consideration. It may support a conviction without supportive evidence from the State and it stands for consideration by the jury in all cases, even in the face of attempts by the appellant to inject the defense of insanity. *Davis*, supra.

Therefore, in the present case, the prosecutor's argument on the presumption of sanity was correct. The State has no burden on that issue. Insanity is an affirmative defense which must be established by a preponderance by the appellant. These arguments being proper, ground of error four is overruled.

The judgment is affirmed.

DALLY, Judge, concurring.

Appellant contends that the trial court erred by permitting the prosecuting attorney to argue, over objection, that because of the presumption of sanity the State did not have the burden of proof on the issue of the insanity defense. The proper disposition of this ground of error is *not* to be found in a discussion of the law of presumptions.

A leading commentator has observed that " 'presumption' is the slipperiest member of the family of legal terms, except its first cousin, 'burden of proof.' " McCormick, Evidence, Sec. 342 (2d ed. 1972). But while the subject of presumption has produced much confused and confusing language, it is generally agreed that the term describes "a relationship between one fact or group of facts and another fact or group of facts." Morgan and Weinstein, Basic Problems of State and Federal Evidence (5th ed. 1976). McCormick suggests the following definition:

"[A] presumption is a standardized practice, under which certain facts are held to call for uniform treatment with respect to their effect as proof of other facts." McCormick, supra, Sec. 342.

See also 9 Wigmore, Evidence, Sec. 2491 (3d ed. 1940).

In this State, the defense of insanity is an affirmative defense as to which the accused bears both the burden of producing evidence and the burden of persuasion. V.T. C.A. Penal Code, Secs. 2.04 and 8.01. While the term presumption is often used in reference to affirmative defenses, this use of the term as a legal concept is incorrect.

"[Affirmative defenses] do not operate with regard to inferences drawn from the evidence, but rather operate as principles of substantive law governing the entire proceeding. An example of such a rule of law mislabeled a presumption is the 'presumption of sanity,' as it operates against the defendant in a criminal case. The so-called 'presumption' is simply a rule stating that the defendant has the burden of producing evidence (or of proving) his insanity at the time of the of-

fense. The use of the term presumption is only confusing." McCormick, supra, Sec. 346.

Since, strictly speaking, there is no presumption of sanity, the correct disposition of this ground of error is not to be found in those cases and texts dealing with the procedural and evidential effect of presumptions. The question presented is simply whether the prosecutor's reference to the non-existent presumption of sanity was so manifestly improper as to require a reversal of the judgment. See *Thomas v. State*, 519 S.W.2d 430 (Tex.Cr.App.1975); *Minter v. State*, 505 S.W.2d 581 (Tex.Cr.App.1974). I conclude that it was not.

The remark of the prosecutor of which complaint is made occurred during the following exchange:

"MR. ELLIS: . . . Remember that the defendant was and is presumed to be sane until you say definitely by your verdict. And I don't have the slightest burden in the world imposed on me in that respect. Now how did the defendant—

"MR. CABALLERO: Judge, I object to any mention of presumptions, those presumptions have vanished at the point I submitted evidence of insanity and my burden is only to prove insanity by a preponderance of the evidence . . . . It is an improper remark and not the law.

"THE COURT: I will refer the ladies and gentlemen of the jury to the charge, and overrule your objection.

"MR. ELLIS: Look in the charge. The defendant must prove an affirmative defense by the preponderance of the evidence. Why does the defendant have to prove something, if it is not the case, because it is presumed to be the other way around.

"MR. CABALLERO: Judge, I object to that. There is not a word presumption in the charge anywhere. That presumption is not given to the jury and I object to counsel arguing about a presumption that no longer exists.

"THE COURT: I will refer the jury to the charge and overrule your objection.

"MR. ELLIS: Let me draw an analogy that I am sure Mr. Caballero won't quarrel with. The presumption of innocence, the defendant is presumed to be innocent until the State proves him guilty.

"MR. CABALLERO: Judge, I object to that. The presumption of innocence is in the charge and the presumption of insanity is not. That is improper argument.

"THE COURT: Overruled, sir."

The essence of the prosecutor's argument was that the State was under no obligation to bring forward evidence that the appellant was sane at the time of the offense; that the burden of proof as to the insanity defense was entirely on the appellant. To this extent, the prosecutor's argument was a correct statement of the law and in accord with the trial court's charge to the jury. Moreover, the prosecutor did not argue that the jury should consider the "presumption of sanity" as evidence that appellant was sane at the time of the offense. The prosecutor merely fell into the error, commonly made, of attributing the accused's burden of proof on the insanity defense to a "presumption of sanity." Given the context in which this reference to the "presumption" was made and the clear and correct charge on the insanity defense, the prosecutor's error was not so manifestly improper or prejudicial to the appellant as to require a reversal of the judgment.

I concur in the affirmance of the judgment.

CLINTON, Judge, dissenting.

In this possession of heroin case appellant's noticed defense pursuant to Article 46.03, Section 2, V.A.C.C.P., was insanity. Rejecting it, the jury convicted appellant and at the punishment stage found two prior convictions, with the consequence that he was ordered confined for life.

A legal axiom is that the law presumes every person to be sane until the contrary is shown. Indeed, in earlier times, when a plea of not guilty by reason of insanity was made and issue joined, for the trial court to inform the jury of that presumption was

not unusual.[1] Because of the presumption the common law, case law and the applicable statutes impose upon an accused the burden of establishing his plea of insanity by a preponderance of testimony.[2] No longer, though, is it recommended that a trial court mention the presumption when charging the jury on insanity.[3] Nor, in the charge before us, did the trial court allude to the presumption. I shall show why.

In a section under his ground of error four appellant directs our attention to an oral motion in limine requesting the trial court to instruct the State not to mention or argue concerning the presumption of sanity to the jury, and the action of the court in overruling it.[4] Thereupon in closing argument the State was permitted, over stoutly asserted objections, to argue that because of presumption of sanity, it had no burden whatsoever on the issue and did not have to produce evidence.[5] I am satisfied that the State occasioned error by the trial court and that it was harmful to appellant beyond a reasonable doubt.

Presumption of sanity, like many other so called presumptions, serves only to guide the trial court in locating the burden of proof at a particular time, 1 Texas Practice, McCormick & Ray, Evidence 75 § 57. "It is by reason of this presumption that the law

1. E. g., *Guerrero v. State*, 75 Tex.Cr.R. 558, 171 S.W. 731, 733 (1914). See also Branch's Annotated Penal Code, 2d Ed. 50, § 59.5.

2. *Lovegrove v. State*, 31 Tex.Cr.R. 491, 21 S.W. 191 (1893) and cases cited therein; *Cross v. State*, 446 S.W.2d 314, 316 (Tex.Cr.App.1969); *Graham v. State*, 566 S.W.2d 941, 943 (Tex.Cr. App.1978); V.T.C.A. Penal Code, Sections 8.01 and 2.04(d).

3. See and compare *Texas Criminal Pattern Jury Charges 24*, CPJC 8.01 Insanity; *8 Texas Practice, Criminal Forms Annotated*, 8th Edition, 175 § 85.01 Insanity; *McClung's, Jury Charges for Criminal Practice*, 1979 revised edition, 185 Insanity.

4. The position of the parties and rationale of the court were discussed in a colloquy that included the following pertinent excerpts:

"MR. CABALLERO: I don't want any mention that he is presumed sane because that is not the case, he is presumed sane until I put some evidence in and you submit the issue to the jury and then the presumption is gone.
MR. ELLIS: Your Honor, the State takes issue with the last statement of counsel.
THE COURT: I will reconsider. I don't think it is improper argument. It is not different from where you say a defendant is presumed to be innocent until his guilt is established by legal evidence beyond a reasonable doubt. * * *
MR. CABALLERO: The presumption of innocence remains with the person, whereas the presumption of insanity does not.
THE COURT: I think it does until overcome by a preponderance of the evidence.
MR. CABALLERO: Once you submit the issue to the jury you have already made that determination and it is in issue.
THE COURT: We are just talking about words of argument as I understand it, I see no reason to prohibit the State from stating

that in his summation of the case if he so wishes."

5. Portions of that exchange were as follows:
"MR. ELLIS: * * * Remember that the defendant was and *is* presumed to be sane until you say definitely by your verdict. And I don't have the slightest burden in the world imposed on me in that respect. Now how did the defendant—
MR. CABALLERO: Judge, I object to any mention of presumptions, those presumptions have vanished at the point I submitted evidence of insanity and my burden is only to prove insanity by a preponderance of the evidence. * * * It is an improper remark and not the law.
THE COURT: I will refer the ladies and gentlemen of the jury to the charge, and overrule your objection.
MR. ELLIS: Look in the charge. The defendant must prove an affirmative defense by the preponderance of the evidence. Why does the defendant have to prove something, if it is not the case, because it is presumed to be the other way around.
MR. CABALLERO: Judge, I object to that. There is not a word presumption in the charge anywhere. *That presumption is not* given to the jury and I object to counsel arguing about a presumption that no longer exists.
THE COURT: I will refer the jury to the charge and overrule your objection.
MR. ELLIS: Let me draw an analogy that I am sure Mr. Caballero won't quarrel with. The presumption of innocence, the defendant is presumed to be innocent until the State proves him guilty.
MR. CABALLERO: Judge, I object to that. The presumption of innocence is in the charge and the presumption of insanity is not. That is improper argument.
THE COURT: Overruled, sir."

casts upon one relying on insanity as a defense to a crime the burden of establishing by a preponderance of the evidence" his defense, *Fuller v. State*, 423 S.W.2d 924 (Tex.Cr.App.1968); *Nilsson v. State*, 477 S.W.2d 592, 599 (Tex.Cr.App.1972); *Bonner v. State*, 520 S.W.2d 901, 906, n. 2 (Tex.Cr.App.1975), and has been upheld against a challenge that it is not based on any reasonable classification or rational foundation, *Breland v. State*, 489 S.W.2d 623, 625 (Tex.Cr.App.1973). Yet a "presumption" whose function is to allocate the burden of proof is really not a "presumption" in the dictionary sense of drawing a particular inference from a particular fact or from particular evidence. Rather, in the absence of a statute, it is a rule of law that determines which party has the burden of proof and by what standard.

We have not found nor have the parties directed our attention to a prior decision by this Court on the issue. Thus we may, indeed must, resort to general principles and authorities that examine the rule in a context of the issue of insanity that is before us. Omitting footnotes, I quote from McCormick on Evidence, 2d Ed. 830, § 346 "The Effect of Presumptions in Criminal Cases," the part of a paragraph that appears applicable here: [6]

"Similarly, the term presumption has been used in connection with rules that . . . create affirmative defenses to, a crime. These rules . . . may specify that the defendant simply has the burden of producing evidence . . . or may also fix the burden of persuasion on the defendant as well. *They do not operate with regard to inferences drawn from the evidence, but rather operate as principles of substantive law governing the entire proceeding.* An example of such rule of law mislabeled a presumption is the 'presumption of sanity,' as it operates against the defendant in a criminal case. The so-called 'presumption' is sim-

ply a rule stating that the defendant has the burden of producing evidence (or of proving) his insanity at the time of the offense. The use of the term presumption is only confusing." [7]

Similarly, in 1 Texas Practice 97, McCormick & Ray, Evidence § 85 are the following observations, omitting footnotes, citing a host of Texas cases:

"By the other view the burden of proving insanity at time of the offense is placed upon the accused. However, the measure of persuasion required is only a preponderance of evidence. The Texas courts adopt this latter view. It is frequently said by our courts that the presumption of sanity casts this burden of persuasion upon the accused. In reality, of course, it is merely an affirmative defense, and the burden of establishing it is placed upon the accused as the result of judicial experience in dealing with this issue in criminal cases."

Of course, the common view perceived by eminent authors of both scholarly works with respect to insanity is now codified without reference to any "presumption." V.T.C.A., Penal Code, § 8.01(a) provides that insanity is "an affirmative defense to prosecution," and by reason of *id.* § 2.04(c), (d) the issue of insanity "is not submitted to the jury unless evidence is admitted supporting the defense," and, if submitted, "the court shall charge that the defendant must prove the affirmative defense by a preponderance of the evidence." Thus, provisions of the Penal Code that characterize insanity as an affirmative defense and prescribe the occasion for submitting the affirmatively defensive issue of insanity have stripped the "presumption of sanity" of its purpose and function and reduced it to the anachronism that it had already become.

In this light, then, any effort to categorize a "presumption of sanity" is an exercise in futility. It simply no longer exists. The question then becomes whether the trial

---

6. I present portions appearing ahead of, and include the excerpt set forth in the majority opinion, in order to show the full context and give its complete meaning.

7. All emphasis is supplied throughout by the writer of this opinion unless otherwise indicated.

court erroneously permitted the State to argue in such a way as to gain support for its position by asserting as a matter of law and fact that which is neither.

Canvassing prior opinions and annotating rules derived from them, in *Alejandro v. State*, 493 S.W.2d 230 (Tex.Cr.App.1973) the Court stated:

> "To receive the stamp of approval of this Court, jury arguments need to be within the areas of: (1) summation of the evidence . . . ; (2) reasonable deduction from the evidence . . . ; (3) answer to argument of opposing counsel . . . ; and (4) plea for law enforcement . . . The arguments that go beyond these areas too often place before the jury unsworn, and most times believable, testimony of the attorney."

Correlatively stated, improper argument is that which asserts as fact matters which are not in the record, e. g., *Alejandro*, supra, *Lott v. State*, 490 S.W.2d 600 (Tex.Cr. App.1973), and that which is represented as law but is not and, further, is contrary to the charge of the court, *Davis v. State*, 506 S.W.2d 909 (Tex.Cr.App.1974). Here patently the argument to which objection was persistently made was not confined to *Alejandro* subjects and offended its mutually related principles.

In the first place, counsel was urging the jury to consider the presumption as if it were evidence favorable to the State. Whereas the charge of the court instructs the jury that in deciding whether the affirmative defense of insanity has been proven by a preponderance of the evidence the jury is to determine "the greater weight and degree of credible testimony or evidence *introduced* before you and *admitted in evidence* in this case." The presumption, of course, was neither credible testimony nor evidence adduced. Yet the prosecutor persisted, even to the point of drawing an analogy between the presumption he was

relying on and the better known presumption of innocence, concerning which the court did charge in the usual manner. If not ruled directly by *Stockton v. State*, 146 Tex.Cr.R. 164, 171 S.W.2d 877 (1943), that decision is enough to persuade me that the argument was improper. There Stockton, who had earlier been adjudged sane in the county court, advanced the defense of insanity to the criminal prosecution; when he began to present evidence in support of his plea, the district attorney made a side-bar remark in the presence and hearing of the jury in the course of purporting to object to the testimony "for the reason that this defendant has had an insanity hearing in the County Court and he has been determined to be a sane individual and we object to any further testimony in regard to any insanity on his part." The court sustained the objection and instructed the jury not to consider it. Then, as a witness was testifying in support of the plea, the district attorney repeated the ploy and the court again sustained an objection and instructed the jury not to consider the statement. This Court found that the instruction was not sufficient to have withdrawn effectively the prejudicial nature of the remarks:

> "It is obvious that the District Attorney, by his conduct, got before the jury unsworn testimony of a secondary nature upon a material issue which they, according to their own admission, considered in determining whether the appellant was sane or insane at the time of the commission of the offense charged." [8]

Similarly, here, the district attorney put before the jury his unsworn testimony concerning a presumption of sanity to earn for the State the benefit of that presumption as the jury passed on the primary crucial defensive issue raised by appellant.

Secondly, as has been demonstrated above, the statements concerning the presumption being in effect at the very time

---

**8.** Perhaps because it is now generally regarded as improper to call upon jurors to identify factors considered in their deliberation, we do not have the information alluded to by the court in *Stockton*. But it is noted that in passing on the defense of insanity the jury sought, through a note to the trial court, further data concerning the hospitalization of appellant for 27 months, the testimony from a psychiatrist called by appellant being that at some unspecified date appellant was a patient at the Federal Narcotic Hospital in Fort Worth for heroin addiction.

the district attorney was making them are incorrect statements of the law. Appellant having introduced testimony in support of his plea of insanity, the State's passive role was drained of its vitality.[9] In *Davis v. State*, supra, to the charge of murder the accused raised the defense of accident and the trial court instructed the jury to find him not guilty if it believed or had a reasonable doubt "that the shooting was by the accidental discharge of a shotgun in the hands of the defendant." The State was permitted to argue over objection that the defense was valid only if the accused was engaged in a lawful act at the time of the shooting and would be forfeited if he were then committing an unlawful act. Here, again, the court instructed the jury to determine from the preponderance of the evidence, meaning credible testimony and evidence admitted, whether appellant was legally insane at the time of the offense. It further instructed the jury in the usual form that the jurors were exclusive judges of the facts proved, of the credibility of the witnesses and of the weight to be given to the testimony and were bound to receive the law from the court as contained in the charge. To admonish the jury, then, to "remember" that the accused "was and is presumed to be sane" derogates the charge of the court and, when reiterated after overruled objections, conveys the impression that the jury may properly give weight to the presumption. Writing for this Court on motion for rehearing in *Rodriquez v. State*, 100 Tex.Cr.R. 11, 271 S.W. 380, 383 (Tex.Cr.App.1925), Judge Lattimore observed that a trial court may not "so sanction statements as to the law of the case made by the district attorney as in effect to make his approval thereof nullify charges already given." There the matter at issue was a charge on circumstantial evidence given at the request of the accused and the

assault on that part of the charge was made by the district attorney telling the jury that it was not a case of circumstantial evidence, that the court did not believe it to be such and "that the court had simply given to them the special charge because appellant's counsel had requested same, and that it had been requested only by appellant's counsel in order that they might make a big speech in the case."

In the case before us, as required by Article 46.03, Section 2, V.A.C.C.P., and as the jury was informed, appellant gave notice of his intention to offer evidence of insanity as a defense. Since the defense was supported by psychiatric and other testimony, the trial court submitted insanity as an affirmative defense. In his closing argument the prosecuting attorney made a few preliminary remarks and then argued:

> "What do you do when your man is caught red handed, what can you do? Well, then you plead not guilty, when you do that you come up and you say this is all a frame, these officers are lying, they are not to be trusted. As long as we are on the subject of foul blows, you can say we didn't do it, but yes we did. In other words, no ladies and gentlemen he didn't do this, we plead not guilty, but just in case you prove beyond a reasonable doubt that we did, then we are not guilty by reason of insanity. Blow two hurts."

Revisiting the facts of the offense briefly, counsel then made the statements, drew the objections and achieved favorable rulings from the court concerning the presumption of sanity that we have been discussing. He then addressed the testimony of the psychiatrist presented by the defense, reminded the jury of portions of testimony given by the psychiatrist for the State, interpreted the testimony of both and then returned to the original theme:

---

**9.** Indeed, in obvious recognition of its demise, the State joined issue with the plea by presenting its own expert witness in rebuttal. That well qualified psychiatrist had just been contacted by the State the afternoon preceding his next morning testimony and whether for lack of time or opportunity or whatever he neither examined appellant nor purported to diagnose

him. The thrust of his testimony was an explanation of terms and classifications of the disease, defects and disorders used in psychiatry and a denigration of the examination of appellant by his psychiatric witness. Not presenting any opinion testimony that appellant was sane, the need of the State to invoke and urge the presumption of sanity thus became a real one.

"You decide for yourselves. The defendant is as crazy as a fox isn't he? Is he compelled to sell it? If you are an addict you are not going to give it away under any circumstances. Well I am finished. I think that is the insanity defense. I would like to call it the escape hatch defense. When you were hemmed in on all sides, you come to the courtroom and you know you can always say I knew it was wrong but I couldn't help myself and a couple of days before trial if you can get somebody to come in and talk to somebody and say that, it looks so good."

To an objection pointing out that the State was on notice "about our defense and they never had him examined," which was overruled, the prosecuting attorney responded:

"There is a lot of prisoners up in the jail ladies and gentlemen. I hate to think what would happen if I had to wonder whether or not a defendant was going to put on the defense of insanity so I could have them all examined before trial."

Given the context in which they were made, surely the inaccurate statements of what purports to be the law constitute improper argument, for they were not contained in the charge of the court and designed to nullify it in that regard. *Cook v. State*, 540 S.W.2d 708 (Tex.Cr.App.1976); *Davis v. State*, supra, and *Rodriquez v. State*, supra.

In the circumstances of this case, I cannot say that the argument is harmless. Therefore, I conclude that the trial court erred in denying the motion in limine, overruling pointed objections to the argument and permitting it to be accepted by the jury as correct. *Cook v. State*, supra, and cases cited therein.

Because the judgment is not reversed and the cause remanded, I respectfully dissent.

## OPINION ON APPELLANT'S MOTION FOR REHEARING

ONION, Presiding Judge.

On original submission this conviction for possession of heroin was affirmed with the punishment being assessed at life imprisonment as a result of two prior felony convictions alleged and proved. See V.T.C.A., Penal Code, § 12.42(d). The panel of this court to which this cause was submitted was divided on the proper disposition of appellant's last ground of error dealing with the prosecutor's reference in jury argument to the presumption of sanity. In the opinion disposing of all the grounds of error, it was held that the presumption of sanity exists and the prosecutor therefore did not err in using it in his argument to the jury. A concurring opinion took the view that the presumption of sanity does not exist but that the reference to such in jury argument in the context in which it was used was harmless error. A dissenting opinion took the same view that the presumption of sanity does not exist but concluded that it was harmful to argue it to the jury.

We granted the motion for rehearing so that appellant's last ground of error could be considered by the court en banc.

Appellant's last ground of error submitted in question form reads:

"Did the trial court err in refusing to direct a verdict of acquittal on the issue of insanity and in improperly placing too great a burden upon the accused on that issue through his rulings?"

In addition to being improperly framed in question form, the ground of error is multifarious and not in accordance with Article 40.09, § 9, V.A.C.C.P. Nevertheless, the panel to whom this cause was submitted, viewed the ground of error, as a contention that the court erred in permitting the prosecutor in his argument to the jury to make reference to the presumption of sanity where the defense of insanity had been interposed.

After consideration and study, we conclude en banc that the original concurring and dissenting opinions were correct in stating there is no presumption of sanity.[1] We conclude further that the prosecutor

---

1. We see no need to repeat what was said in those opinions in support of such conclusion.

erred in making reference to such presumption in his jury argument, but the error was harmless error under all the circumstances. We adopt the original concurring opinion as the opinion of the court en banc in disposing of appellant's last ground of error.

Appellant urged on original submission that the trial court erred in refusing to grant his motion for instructed verdict of not guilty. This contention does not appear to have been considered or discussed on original submission. On rehearing appellant re-urges the contention arguing that he had established his defense of insanity as a matter of law because the State produced no evidence in rebuttal.

Appellant called Dr. Manuel Hernandez, a psychiatrist, who testified that he examined appellant for an hour and a half and concluded that appellant was insane on the date of the alleged offense. He related there had been no psychological testing. In rebuttal the State called Dr. Joseph Hornisher, a psychiatrist, who had been practicing medicine and psychiatry for fifty years. Hornisher testified that he could not diagnose whether a person was insane according to the standard set by law in an hour and a half examination without any psychological testing, etc. He admitted he had not examined the appellant and did not express an opinion as to his sanity. It is obvious the State called Dr. Hornisher in an effort to weaken the opinion testimony of Dr. Hernandez.

Appellant argues that only Dr. Hernandez testified that he (appellant) was insane, and since Dr. Hornisher had not examined appellant and expressed no opinion as to his sanity, Dr. Hernandez's testimony was undisputed establishing insanity at the time of the commission as a matter of law.

Insanity is an affirmative defense, V.T.C.A., Penal Code, § 8.01, and the burden of proof of such defense is on the defendant by a preponderance of evidence and the State is not required to negate the existence of such an affirmative defense. V.T.C.A, Penal Code, § 2.04.

Appellant overlooks the fact that the jury is the exclusive judge of the facts, the credibility of the witnesses and the weight to be given their testimony. See Articles 36.13 and 38.04, V.A.C.C.P.; *Miller v. State*, 566 S.W.2d 614 (Tex.Cr.App.1978). Even though Dr. Hernandez was the only witness to testify as to appellant's sanity or insanity, the jury was not required to believe him. The jury may accept or reject any or all of the testimony of any witness. *Preston v. State*, 457 S.W.2d 279 (Tex.Cr.App.1970); *Baldwin v. State*, 538 S.W.2d 615 (Tex.Cr.App.1976).

The defense of insanity was not established as a matter of law, and the court did not err in overruling the motion for instructed verdict. See *Graham v. State*, 566 S.W.2d 941 (Tex.Cr.App.1978).

Appellant's motion for rehearing is overruled.

DOUGLAS and ROBERTS, JJ., concur.