

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-17-00149-CR

Jimmy Wayne **COOK**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 226th Judicial District Court, Bexar County, Texas
Trial Court No. 2016CR4105
Honorable Sid L. Harle, Judge Presiding

Opinion by:    Irene Rios, Justice

Sitting:    Marialyn Barnard, Justice
        Patricia O. Alvarez, Justice
        Irene Rios, Justice

Delivered and Filed:  August 8, 2018

AFFIRMED AS MODIFIED

A jury convicted Jimmy Cook of two counts of solicitation to commit capital murder. Upon the jury's recommendation, the trial court sentenced Cook to two concurrent terms of twenty-seven years' imprisonment.  Cook raises six issues on appeal in which he challenges the sufficiency of the evidence supporting his conviction and the jury's rejection of his renunciation affirmative defense; contends the trial court erred by denying his request for a mistrial based on the State's closing argument; and argues he was denied due process of law.  Cook additionally points out that the judgments of conviction reference the incorrect penal code sections and requests

that we reform the judgments of conviction accordingly. We modify the judgments of conviction and affirm the judgment of the trial court as modified.

## BACKGROUND

During a late-night delivery on December 30, 2015, delivery truck driver Cook, complained to receiving dock worker Christopher Cowan about his ex-girlfriend, later identified as Jessica. Cowan, who did not know Cook or Jessica, characterized the things Cook said about Jessica as "horrible." According to Cowan, Cook seemed particularly angry that Jessica was in a new relationship. At some point in the conversation, Cook informed Cowan that he wanted Jessica "taken out." Eventually, Cook asked if Cowan would "take [Jessica] out." Cowan feigned interest, and Cook offered payment, but stated he couldn't afford to pay a lot. The pair did not agree upon a payment amount at that time. Cook provided Cowan with his phone number and emphasized to Cowan that "it couldn't come back on him."

Cowan immediately went to the police station to report the incident. Working with San Antonio Police Department (SAPD) Detective Lawrence Saiz, on January 4, 2016, Cowan sent Cook a text message, asking if Cook still wanted "someone to take care of [his] ex-[g]irlfriend." Cook answered "yes," and Cowan replied he needed information and that the cost would be $1,000. Cook responded "ok" and followed up by telling Cowan "[i]t's not her you'll be doing." Cook went on to provide Cowan with the name and description of Jessica's new boyfriend, Richard; the town in which the couple lived; a description of Jessica's vehicle; the location of Jessica's employment; and a location where the couple could usually be found on Friday evenings at 7:00. Cook emphasized, "Got to make sure whoever does it don't know about me and can't remember my name or anything about me."

On January 5, 2016, Cowan assured Cook he had not been speaking with anyone else and verified Cook still "want[ed] it done." Cook responded he did, but that he "want[ed] it down low."

On January 6, 2016, Cowan attempted to arrange an in-person meeting with Cook, but Cook indicated his truck was broken down and he could not meet. On January 7, 2016, Cowan again attempted to arrange a meeting, and Cook responded, "I've got other things going try any way." On January 8, 2016, Cowan asked Cook whether he "still want[ed] it done," and Cook responded "No got other things going right now."

Following further investigation that included interviews with Jessica and Richard, Detective Saiz learned Jessica had contacted authorities in Pennsylvania where she lived regarding Cook's continued threatening behavior against her. Detective Saiz received the emails, text messages, and voice mail messages attributed to Cook from Pennsylvania State Trooper Patrick McGuerin. Detective Saiz obtained an arrest warrant for Cook on February 10, 2018, and members of the U.S. Marshal's task force arrested Cook in South Carolina on February 18, 2018.

## SUFFICIENCY OF THE EVIDENCE

In his first issue, Cook challenges the sufficiency of the evidence supporting his conviction for solicitation to commit capital murder. Cook specifically argues the evidence is insufficient because the only evidence connecting him to the offense was provided by the person he solicited.

### Standard of Review

In reviewing the sufficiency of the evidence to support a criminal conviction, "we view the evidence in the light most favorable to the verdict and determine whether, based on the evidence and reasonable inferences therefrom, a rational juror could have found the essential elements of the crime beyond a reasonable doubt." *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017) (internal citation omitted). We "defer 'to the responsibility of the trier of fact to fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "Each fact need not point directly and

independently to the [appellant's] guilt ..., as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

## Applicable Law

"A person commits an offense if, with intent that a capital felony or felony of the first degree be committed, he requests, commands, or attempts to induce another to engage in specific conduct that, under the circumstances surrounding his conduct as the actor believes them to be, would constitute the felony or make the other a party to its commission." *See* TEX. PENAL CODE ANN. § 15.03(a) (West 2011). The capital felony involved in the underlying case was capital murder. The type of capital murder at issue was that encompassed in section 19.03(a)(3) of the Penal Code, that is, the solicitation to commit murder by employing another to commit it for remuneration or the promise of remuneration. *See id.* § 19.03(a)(3) (West Supp. 2017).

To the extent the person solicited to commit the crime testifies at trial, the Penal Code specifically requires that his testimony be corroborated. The Penal Code states that a "person may not be convicted ... on the uncorroborated testimony of the person allegedly solicited and unless the solicitation is made under circumstances strongly corroborative of both the solicitation itself and the actor's intent that the other person act on the solicitation." *See id.* § 15.03(b) (West 2011). In conducting a sufficiency review of corroborating evidence, we eliminate from consideration the accomplice testimony and then determine whether there is other incriminating evidence tending to connect the defendant with the commission of the crime. *Solomon v. State*, 49 S.W.3d 356, 361 (Tex. Crim. App. 2001). Therefore, Cowan's testimony will be eliminated from our analysis when evaluating corroborating testimony.

The non-accomplice evidence does not have to directly link appellant to the crime, nor does it alone have to establish appellant's guilt beyond a reasonable doubt; rather, it merely must

tend to connect appellant to the offense.  *Id*.  Such corroboration may come from insignificant incriminating circumstances.  *Trevino v. State*, 991 S.W.2d 849, 852 (Tex. Crim. App. 1999).  Further, although evidence of motive is insufficient in and of itself to corroborate an accomplice's testimony, it may be considered with other evidence tending to connect the accused with the crime.  *Reed v. State*, 744 S.W.2d 112, 127 (Tex. Crim. App. 1988).

**Discussion**

The State presented Exhibit No. 11, which includes the SMS (text) message conversations between Cook and Cowan that took place between January 4, 2016 and January 8, 2016.  In their text message conversations, Cook provided Cowan with specific details about Jessica and Richard, including where they lived, where Jessica worked, the couple's regular Friday evening schedule, and what vehicle Jessica drove.  Additionally, when Cowan stated a payment price of $1,000, Cook responded "Ok."  Further, in the text messages, Cook anticipated another carrying out the murders and asserted to Cowan that "it" could not be attributed to Cook.  Later, when Cowan asked Cook if he still wanted to go forward, Cook responded yes.

During Jessica's testimony, the State presented several text and email messages that Jessica received from Cook in which Cook told Jessica she could "[c]ount [her]self as a murder," that she was "going to be missing" and "going to get [hers] in the end," would not see another holiday, and "the best thing for [her] is a bullet in [her] head."  Cook also accused Jessica of cheating.  Additionally, the State played voice mail messages attributed to Cook in which Cook referred to Richard as Pee Wee Herman, which corresponded to the description of Richard that Cook gave Cowan.  In the voice mails, Cook also threatens Jessica that her life is going to be short, she should watch over her shoulder, he was watching and going to get her, and that her time is coming.

Viewing all the evidence in the light most favorable to the verdict, we conclude a rational trier of fact could have found Cook requested, commanded, or attempted to induce Cowan to

murder Jessica and Richard. Based on the non-accomplice testimony and evidence, Cowan's testimony about being solicited to kill Jessica and Richard was "strongly" corroborated as required by Penal Code section 15.03(b). Therefore, the evidence is sufficient to find Cook guilty of solicitation of capital murder. We overrule Cook's first issue on appeal.

## RENUNCIATION

In issue two, Cook contends the trial court erred by overruling his motion for directed verdict because the evidence established renunciation. Cook reasons the evidence is factually insufficient to support the jury's rejection of his renunciation defense, and therefore, the trial court should have granted his motion for directed verdict. In issue three, Cook contends the evidence is "factually insufficient to support the jury's rejection of his renunciation mitigation issue at punishment."

### Standard of Review

"A motion for instructed verdict is essentially a trial level challenge to the sufficiency of the evidence." *Smith v. State*, 499 S.W.3d 1, 6 (Tex. Crim. App. 2016). We may review a jury's rejection of an affirmative defense for factual sufficiency. *Butcher v. State*, 454 S.W.3d 13, 20 (Tex. Crim. App. 2015). In a factual sufficiency review, we examine the evidence in a neutral light and overturn the factfinder's decision only if it is so against the great weight and preponderance of the evidence as to be manifestly unjust, conscience-shocking, or clearly biased. *Id*.

### Renunciation Defense

It is an affirmative defense to prosecution for criminal solicitation if "under circumstances manifesting a voluntary and complete renunciation of his criminal objective the actor countermanded his solicitation ... before commission of the object offense and took further affirmative action that prevented the commission of the object offense." TEX. PENAL CODE ANN.

§ 15.04(b) (West 2011). Thus, under the statute, a defendant must countermand the solicitation and the renunciation must be voluntary. *Id*.

Evidence that a defendant renounced his criminal objective by countermanding his solicitation before the criminal offense was committed and that he made a substantial effort to prevent commission of the object offense is admissible as mitigation evidence at the punishment phase of trial if he has been found guilty of criminal solicitation. *See* TEX. PENAL CODE ANN. § 15.04(d). If the factfinder finds the defendant renounced his criminal objective, the punishment shall be one grade lower than that provided for the offense committed. *Id*. Renunciation of an offense under section 15.04(d) is a punishment-phase affirmative defense. *Id*. The defendant bears the burden of proof by a preponderance of the evidence on the issue of an affirmative defense. *See id*. § 2.04(d); *Madrid v. State*, 595 S.W.2d 106, 110-11 (Tex. Crim. App. [Panel Op.] 1979).

The penal code does not define "countermand." Where a statutory term is not defined by the Legislature, we give that term its ordinary meaning. *Morrow v. State*, 862 S.W.2d 612, 614 (Tex. Crim. App. 1993). "In consulting dictionaries for the meaning of a particular word, we look to the lexicographical alternatives that the Legislature most likely had in mind, taking into account the context provided by the phrase, subsection of the statute, and overall statutory scheme in which the word appears." *Cornet v. State*, 359 S.W.3d 217, 222 (Tex. Crim. App. 2012). The term "countermand" is defined by Webster's Dictionary to mean "to revoke (a former command)" or to "cancel or rescind (an order) by giving a contrary order"; "to recall or order back by a superseding contrary order"; or "to stop or prohibit by revoking an order or issuing a contrary order." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 519 (2010). Thus, to have countermanded his solicitation of Cowan, appellant must have revoked, rescinded, or recalled his earlier order to kill Jessica and Richard.

**Discussion**

In his brief, Cook presents issues two and three together. Cook contends he "cancelled and rescinded his earlier order to kill [Jessica] by responding that the new target would be her "new man." Cook further contends he completely renounced the solicitation by: "waffl[ing]" and "flak[ing]" out by responding that his truck was broken down when Cowan tried to arrange an in-person meeting; not responding to Cowan's text message that the cost would "250 up front;" and answering Cowan's inquiry whether Cook "still want[ed] it done" with "no I have other things going right now" constituted a complete renunciation.

As noted above, the Penal Code requires a "manifest[ation] of a voluntary and complete renunciation of his criminal objective." *See* TEX. PENAL CODE ANN. § 15.04(b). Section 15.04 further provides that "renunciation is not voluntary if it is motivated in whole or in part … by a decision … to transfer the criminal act to another … victim." *Id*. § 15.04(c)(2).

A reasonable juror viewing the evidence in this case, specifically the text messages and Cowan's testimony, could infer that Cook did not countermand his solicitation or make a substantial effort to prevent the commission of the object offense. Cook's message to Cowan that his new target was Jessica's "new man" was not an order telling Cowan not to commit murder — rather it showed Cook transferred the solicitation to commit murder from Jessica to Richard, which according to the Penal Code is not a voluntary renunciation. *See id*. Further, Cook's text messages to Cowan stating he could not meet because his truck was broken down and he had other things going on, which were followed by the statement "try anyway" did not contradict or revoke Cook's order to kill Jessica and Richard. Additionally, Cook's response to Cowan's text message regarding a down payment of $250 was silence, which is not a contrary order that revoked or recalled the order to murder Jessica and Richard. Although Cook responded "no" and he had "other things going right now" to Cowan's question of whether Cook "still want[ed] it done," the

statement did not give an order that was contrary to Cook's earlier order to kill Jessica and Richard. Finally, the record does not contain any indication that Cook took any steps to prevent the murder of Jessica or Richard. Therefore, reasonable jurors could have determined the statements to which Cook points on appeal did not prove voluntary and complete renunciation by a preponderance of the evidence.

Even viewing the evidence in a neutral light, we conclude the evidence supports the jury's determination that Cook did not renounce his criminal objective nor take affirmative steps to prevent the commission of the offense. The jury's rejection of Cook's renunciation affirmative defense is not so against the great weight and preponderance of the evidence as to be manifestly unjust, conscience-shocking, or clearly biased. Further, based upon this conclusion, we cannot say the trial court erred by overruling Cook's motion for directed verdict.

Issues two and three are overruled.

### DENIAL OF MISTRIAL

In issue four, Cook complains the trial court erred by denying his requests for a mistrial during and following the State's closing argument.

### Preservation and Scope of Review

"To preserve error in prosecutorial argument, a defendant must pursue to an adverse ruling his objections to jury argument." *Archie v. State*, 221 S.W.3d 695, 699 (Tex. Crim. App. 2007). The usual sequence to be followed in preserving error in this context is "objection, instruction to disregard, and motion for mistrial." *Id.* The Court of Criminal Appeals, however, has stated:

> this sequence is not essential to preserve complaints for appellate review. The essential requirement is a timely, specific request that the trial court refuses.... Similarly, the request for an instruction that the jury disregard an objectionable occurrence is essential only when the such an [sic] instruction could have had the desired effect, which is to enable the continuation of the trial by a [sic] impartial jury. The party who fails to request an instruction to disregard will have forfeited appellate review of that class of events that could have been "cured" by such an

> instruction. But if an instruction could not have had such an effect, the only suitable remedy is a mistrial, and a motion for a mistrial is the only essential prerequisite to presenting the complaint on appeal.

*Id.* (quoting *Young v. State*, 137 S.W.3d 65, 69-70 (Tex. Crim. App. 2004)). When a party moves for a mistrial without requesting an instruction to disregard, "the scope of appellate review is limited to the question whether the trial court erred in not taking the most serious action of ending the trial; in other words, an event that could have been ... cured by instruction to the jury will not lead an appellate court to reverse a judgment on an appeal by the party who did not request [this] lesser remed[y] in the trial court." *Young*, 137 S.W.3d at 70.

## Standard of Review and Applicable Law

We review a trial court's denial of a mistrial for abuse of discretion. *Archie*, 221 S.W.3d at 699. A trial court abuses its discretion when its decision lies outside the zone of reasonable disagreement. *Id.* Because a mistrial is a drastic remedy, it is only required when an "error is so prejudicial that expenditure of further time and expense would be wasteful and futile." *Wood v. State*, 18 S.W.3d 642, 648 (Tex. Crim. App. 2000) (quoting *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999)). In determining whether a trial court abused its discretion by denying a motion for mistrial in this context, we balance "three factors: (1) severity of the misconduct (the magnitude of the prejudicial effect of the prosecutor's remarks), (2) measures adopted to cure the misconduct (the efficacy of any cautionary instruction by the judge), and (3) the certainty of conviction absent the misconduct (the strength of the evidence supporting the conviction)." *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998).

The four proper areas of jury argument are: (1) summation of the evidence; (2) reasonable deductions from the evidence; (3) answers to opposing counsel's argument; and (4) pleas for law enforcement. *Freeman v. State*, 340 S.W.3d 717, 727 (Tex. Crim. App. 2011). A prosecutor is

allowed wide latitude in drawing inferences from the evidence if the inferences drawn are reasonable and offered in good faith. *Cantu v. State*, 939 S.W.2d 627, 633 (Tex. Crim. App. 1997).

**Discussion**

Cook moved for a mistrial twice during the State's closing argument. The first request for mistrial occurred after the jury heard a recording of the voice mail messages left for Jessica by Cook.

> [The State]: Your time is coming. I would make your life as happy as possible because it's gonna be short. That's Jimmy Wayne Cook's intent. It was his intent back in November. It was his intent on December 30th, January 4th, and I can guarantee you it's his intent today. Okay? The minute he gets the chance –
>
> [Defense]: Objection, Your Honor, that's facts not in evidence.
>
> The Court: All right, sustained.
>
> [The State]: The minute he gets the chance –
>
> [Defense]: Move for a mistrial, Your Honor.
>
> The Court: Denied.

Cook did not request the trial court instruct the jury to disregard the comment. Our review of the record indicates the prosecutor completed this complained-of argument by stating there was no indication Cook ever renounced his plan to have Jessica and Richard murdered. Thus, the prosecutor's argument was a reasonable deduction from the evidence, as well as a response to Cook's renunciation defense. Therefore, the statement fell within the allowable areas of argument.

Even if the prosecutor's argument was improper, the statement was not so extreme that, had Cook requested the trial court instruct the jury to disregard the statement, the trial court's instruction would have been ineffective. *See Young*, 137 S.W.3d at 70. The trial court did not err by "not taking the most serious action of ending the trial" when it denied Cook's first request for mistrial.

The second request for mistrial occurred following the State's final argument.

[Defense]: Your Honor, I object to the entire closing statement, the cumulative effect of all of these egregious misstatements of the fact, the egregious misstatement of the law, poisoning the mind of the jury and I ask for a limiting instruction and a mistrial.

The Court: All right, ladies and gentlemen, I'm going to deny the motion for mistrial. Please rely on the Charge of the Court for the law, that will be the limiting instruction. If you have questions about it, you're entitled to send it out.

In his brief, Cook argues the trial court's limiting instruction was insufficient to protect his rights. Upon our review of the State's entire closing argument, we cannot conclude that there was a willful and calculated effort to deprive Cook of a fair and impartial trial. Further, viewing the record as a whole, we cannot conclude that Cook was prejudiced by the prosecutor's complained-of arguments. Therefore, we conclude the trial court did not err by denying Cook's second motion for mistrial.

Issue four is overruled.

## Prosecutorial Misconduct

In his fifth issue, Cook contends the State engaged in prosecutorial misconduct during its closing argument. Cook argues he "was denied Due Process and the right to present a defense when the prosecutor in this case engaged in deliberate misconduct by egregiously misstating the law and the facts of the case, which confused and poisoned the mind of the jury resulting in the improper rejection of [Cook]'s renunciation defense and an improper conviction."

To properly preserve error in cases of prosecutorial misconduct, a defendant must (1) object on specific grounds, (2) request an instruction that the jury disregard the comment, and (3) move for a mistrial. *Penry v. State*, 903 S.W.2d 715, 764 (Tex. Crim. App. 1995); *see also* TEX. R. APP. P. 33.1.

A complaint on appeal must comport with the objection made in the trial court. *Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002); *Orcasitas v. State*, 511 S.W.3d 213, 220 (Tex. App.—San Antonio 2015, no pet.). The Texas Court of Criminal Appeals has further held that constitutional errors can also be waived if a party failed to properly object to the errors at trial. *Briggs v. State*, 789 S.W.2d 918, 924 (Tex. Crim. App. 1990). If a party's objection at trial does not correspond with its issue on appeal, the party has waived the issue. *Id*.

In this case, Cook refers to the facts and arguments presented in issue four where he noted he "was forced to make 12 objections during the [S]tate's closing argument based on egregious misstatements of the law and facts of the case." However, Cook's issue on appeal is the denial of his due process rights and the right to present a defense. Although Cook briefly discusses compulsory process in the context of prosecutorial misconduct, our review of the State's entire closing argument and specifically the portions of the record cited by Cook indicates Cook did not specify "prosecutorial misconduct" as a basis for his objections. Nor does the record reflect that Cook requested a new trial because of prosecutorial misconduct. The record is simply devoid of a due process objection or an objection specifying prosecutorial misconduct. Cook's appellate issue does not comport with his trial objection, and his trial objections did not preserve the appellate issue he raises. *See Orcasitas*, 511 S.W.3d at 220. Therefore, Cook has waived this issue.

### JUDGMENT ERRORS

In his sixth issue, Cook points out the judgments of conviction for both Count I and Count II properly reflect his conviction for solicitation of capital murder for remuneration but incorrectly refer to Texas Penal Code section 19.03(a)(3). The State agrees the judgments of conviction are incorrect and should be corrected to reflect the correct Penal Code section, which is section 15.03(a). Accordingly, we modify the judgments of conviction for Count I and Count II of Trial

Court No. 2016CR4105 in the 226th District Court which identify the Statute for the Offense is identified at "19.03(A)(3) PC" to "15.03(a)."

Issue six is sustained.

## CONCLUSION

Based on the foregoing reasons, the judgment of the trial court is affirmed as modified.

Irene Rios, Justice

DO NOT PUBLISH