**Joyce Ann VAN GUILDER, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 899–84.

Court of Criminal Appeals of Texas, En Banc.

Nov. 6, 1985.

Certiorari Denied June 9, 1986. See 106 S.Ct. 2891.

Richard E. Langlois (Court appointed on appeal), San Antonio, for appellant.

Sam D. Millsap, Jr., Dist. Atty., Bruce Baxter and Edward F. Shaughnessy, III, Asst. Dist. Attys., San Antonio, Robert Huttash, State's Atty., Alfred Walker, First Asst., State's Atty., Austin, for the State.

## OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

W.C. DAVIS, Judge.

Appellant was convicted of one count of attempted murder and sentenced to twenty (20) years incarceration at the Texas Department of Corrections. The jury found appellant not guilty by reason of insanity on three other counts of attempted murder and one count of murder. All five charges arose out of the same continuous transaction.

The Fourth Court of Appeals reversed the trial court's judgment, concluding that appellant's affirmative defense of insanity had been established as a matter of law and that the jury finding on insanity was against the "great weight and preponderance of the evidence." *Van Guilder v. State,* 674 S.W.2d 915 (Tex.App.—San Antonio 1984). We granted the State's Petition for Discretionary Review to examine that holding.

Five medical experts testified for the defense, all of whom agreed that appellant was legally insane on the date of the offense.

The State offered no evidence to rebut appellant's insanity defense.

The issue in this case concerns the proper standard of review to be used by the court of appeals in criminal cases in general and the standard of review in criminal cases involving an affirmative defense in particular.

In cases where the sufficiency of the evidence to support a criminal conviction is at issue the reviewing court is limited to an analysis based on the test established in *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). In *Jackson,* supra, the Supreme Court required that all the evidence be viewed in the light most favorable to the verdict with the appellate court limiting its inquiry to whether any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. This is accomplished in the reviewing court by considering all the evidence in the case, resolving all conflicts and all reasonable inferences in favor of the verdict and then determining whether there is sufficient evidence to support the judicial action demanded.

The Supreme Court reasoned,

... [T]he critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be not simply to determine whether the jury was properly instructed, but to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. But this inquiry does not require a court to 'ask itself whether *it* believes that the evidence at trial established guilt beyond a reasonable doubt.' *Woodby v. INS,* 385 U.S. [276] at 282, 87 S.Ct. [483] at 486 [17 L.Ed.2d 362] (emphasis added). Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Johnson v. Louisiana,* 406 U.S. [356] at 362, 92 S.Ct. [1620] at 1624–1625 [32 L.Ed.2d 152]. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. Once a defendant has

been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review all of the evidence is to be considered in the light most favorable to the prosecution. The criterion thus impinges upon 'jury' discretion only to the extent necessary to guarantee the fundamental protection of due process of law.

*Jackson,* supra, at 318–319, 99 S.Ct. at 2788–2789.

In a well-reasoned opinion styled *Wilson v. State,* 654 S.W.2d 465 (Tex.Cr.App.1983), this Court further quoted *Jackson,* supra, in determining that the *Jackson* standard of review was based on notions of due process enumerated in the Fourteenth Amendment and was thus binding on the states as a constitutional minimum of protection for criminal defendants:

Under *[In re] Winship* [397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) ] which established proof beyond a reasonable doubt as an essential of Fourteenth Amendment due process, it follows that when such a conviction [that was obtained even when no rational trier of fact would have found guilt beyond a reasonable doubt] occurs in a state trial, it cannot constitutionally stand.

*Wilson,* supra, at 471.

There appears to be substantial confusion in the Courts of Appeal over the proper standard of review in criminal cases. This is due to their reading of Art. 5, Sec. 6 of the Texas Constitution and a recent decision of this Court, *Combs v. State,* 643 S.W.2d 709 (Tex.Cr.App.1982). See *Minor v. State,* 653 S.W.2d 349 (Tex.App.—San Antonio 1983); *Minor,* supra (concurring opinion, J. Cadena).

It is true that as amended, Art. 5, Sec. 6 of the Texas Constitution reads, "that the decisions of said Courts [Courts of Appeal] shall be conclusive on all questions of fact brought before them on appeal or error." However, Art. 1820, V.A.C.S. as amended by the 67th Legislature in 1981 provides, "the judgment of the Courts of Appeal in *civil* cases shall be conclusive in all cases

on the facts of the case." (Emphasis added).

We do not read *Combs,* supra, as requiring anything less than the constitutional standard enumerated in *Jackson,* supra.

In *Combs,* supra, this Court stated:

It is well settled that *our* Court does not have jurisdiction to pass upon the weight and preponderance of the evidence or to 'unfind' a fact. More specifically, our determinations of sufficiency of the evidence have never involved passing on the weight and preponderance of the evidence. *Combs,* supra, at 716.

In a footnote to the above quoted paragraph the Court stated:

We perceive no other standard may be utilized by the Court of Appeals in reviewing criminal convictions other than the sufficiency of the evidence to support the conviction. *Combs,* supra, at 716.

Far from dictating that the court of appeals will be granted fact jurisdiction, this Court in *Combs,* supra, clearly states that the due process standard reviewing proof beyond a reasonable doubt, created in *Jackson,* supra, must be used by the court of appeals in reviewing criminal cases.

To allow the court of appeals to evaluate the facts in a criminal case and to reverse based on their individual belief that a jury finding is against the great weight and preponderance of the evidence both misconceives the burden of proof required for criminal convictions and usurps the function of the jury. In effect, this would make the courts of appeal a thirteenth juror with veto power. Neither the Texas constitution nor *Combs,* supra, supports such a standard of review.

It appears that the confusion in the court of appeals' decision in this area stems from the insertion into the case of an affirmative defense.

With all affirmative defenses the burden of proof is shifted to the defendant who must prove his defense by a preponderance of the evidence. Tex.Penal Code, Sec. 2.04(d) provides this standard of proof:

If the issue of the existence of an affirmative defense is submitted to the jury, the Court shall charge that the defendant must prove the affirmative defense by a preponderance of the evidence.

This burden is very different from that required of all other defenses that are not specifically defined as affirmative defenses in the Texas Penal Code. In other defenses the burden of producing evidence is shifted to the defendant. However, after he has met this burden of production, the State must disprove the allegation beyond a reasonable doubt. Tex.Penal Code Sec. 2.03(d). This level of proof is not required of the State in affirmative defense cases.

Problems with the burden shifting in affirmative defense cases are presented in reviewing the sufficiency of both the affirmative defense and all the evidence. In order to preserve the minimum due process protection established in *Jackson,* supra, and *Winship,* supra, the court of appeals must be allowed to review the sufficiency of the evidence to support the defendant's affirmative defense as well as the sufficiency of the evidence to support the conviction. Otherwise, a defendant's constitutional right to a review of the sufficiency of the evidence to support his conviction is violated. For example, in a case in which the affirmative defense of insanity is asserted and the State responds with some form of rebuttal evidence, be it by cross-examination of defendant's witnesses or by direct examination of their own witnesses, in order for the court of appeals to fulfill the *Jackson* test it must make some kind of determination on sanity because the evidence has made sanity an issue in the case. Without this review on sanity, in every case involving this affirmative defense issue, the appellate court would be constrained to find that the evidence supported the verdict because they would have to *assume* that the affirmative defense was not adequately proven. In short, the appellate court would have to accept the implicit jury finding on the affirmative defense even if irrational.

■ Because some review of the affirmative defense is necessary in such cases in order to afford an appellant due process under *Jackson,* supra, this Court, in keeping with the principles of *Jackson,* supra, must provide a standard of review consistent with constitutional law in this area and the inviolability of the jury as fact finders in Texas criminal law. Therefore, we hold that in reviewing a case involving an affirmative defense, the court of appeals must review the evidence on the affirmative defense by looking at the evidence in the light most favorable to the implicit finding by the jury with respect to such affirmative defense and then determine, by examining all the evidence concerning the affirmative defense, if any rational trier of fact could have found that the defendant failed to prove his defense by a preponderance of the evidence. The court of appeals is limited in its review using this preponderance standard to evidence submitted on the issue of the affirmative defense in question. This review is called for when the defendant is contesting the sufficiency of the evidence to support his conviction because of his assertion that he adequately proved his affirmative defense. It is important to note that this analysis does not involve the appellate court in any fact finding function. The test evaluates the legal sufficiency of the evidence using a legal standard. There must be no reweighing or reclassifying of the evidence by the appellate court.

Using these standards, the type of evidence introduced on the affirmative defense will determine the conclusion to be drawn by the appellate court. For example, in *Madrid v. State,* 595 S.W.2d 106 (Tex.Cr.App.1979), both the defendant and the State presented evidence of insanity. Tex.Penal Code Sec. 8.01(a) describes legal insanity:

It is an affirmative defense to prosecution that, at the time of the conduct charged, the actor, as a result of severe mental disease or defect did not know that his conduct was wrong.

The defendant's evidence in *Madrid,* supra, consisted of one doctor specializing in psy-

chiatry. The doctor testified that he examined the defendant for an hour and a half and, without any psychological testing, determined defendant to have been insane at the time of the offense. In rebuttal, the State called an expert witness who testified that he could not make a diagnosis on insanity based on a ninety minute examination. Thus, he expressed no opinion on the insanity of the defendant.

The defendant in *Madrid*, supra, argued, as did appellant in the instant case, that his evidence of insanity was undisputed and thus conclusively shown. This Court held that the jury was not required to believe the defendant's expert witness and the Court would not reverse such a case based on the weight and credibility of the evidence.

While the opinion in *Madrid*, supra, is no doubt correct, it needs further explanation in order to put it in the perspective of the instant case. *Madrid*, supra, can best be seen as a case where there was competent evidence on both sides of the insanity issue. While the State's expert expressed no opinion on insanity, he did testify that he could not make such a determination based on a ninety minute interview. This can easily be seen as evidence rebutting the defendant's expert's finding of insanity. This is especially so because both doctors examined defendant for the same period of time, one making a determination on insanity, the other saying no determination was possible.

Because of the conflict in evidence on the issue of insanity the *Madrid*, supra, court was reluctant to reverse the trial court's findings. When there is evidence on both sides of the insanity issue it is much more difficult in reviewing a case to find that the jury acted irrationally.

On the other end of the spectrum is a case like the one presented here. In the instant case the State offered no evidence of any kind to rebut the defensive theory of insanity. Far from rebuttal, the prosecutor even admitted on the record, outside the presence of the jury, that a State employed psychiatrist concurred with the defense experts that the appellant was legally insane at the time of the offense. Therefore, there is no conflicting evidence. In this situation, as stated before, the appellate court must be allowed to review the sufficiency of the implicit jury holding that appellant did not prove, by a preponderance of the evidence, that she was insane at the time of the offense. The appellate court is not reweighing the evidence or unfinding facts, but only determining if the jury finding was rational.

Although the court of appeals' recitation of the facts was more than adequate a brief review of them here is helpful.

The record shows that appellant burst through the doors of two separate apartments in succession yelling, "You're gonna pay, you killed her" and "You killed her, and you're gonna pay for it," whereupon she shot five people with a .22 caliber pistol, killing one. Appellant then threw the pistol away and fled from the apartment complex.

Appellant was apprehended close to the scene after she had apparently jumped or fallen off an embankment onto the apron of the interstate highway, breaking a leg and injuring her back.

The only evidence submitted by appellant at trial dealt with her affirmative defense of insanity. Based on the testimony of friends, relatives and medical personnel it was revealed that appellant's father was an alcoholic who occasionally abused her mother, that appellant was sexually molested at an early age, that appellant suffered an attempted incestuous relationship, that appellant had trouble with her sexual identity, (she dressed in a masculine fashion and referred to herself as "Kevin" on several occasions) and that appellant had a homosexual affair while serving in the military. Appellant was discharged from the military for being medically unfit, a conclusion drawn by an army psychiatrist who diagnosed her condition as being "schizophrenic, chronic, differentiated type."

Appellant told the paramedics who arrived to aid her after the shootings, "Ya'll

need to go over there and help the children. Somebody's going to hurt them," after which she mentioned her name, Joyce Ann Van Guilder. Appellant told the paramedics that Joyce was a "bad person" and that "she was going to hurt the children and we needed to stop her...."

At the hospital after the arrest, she gave a recorded statement to the police in which she said, "someone told me they were after me ... someone told me I had to save the children. I had to go down there and get them. They were hurting the children. I had to stop it." In response to several questions about her identity she replied, "I don't know who I am ... Because sometimes I know and sometimes I don't know."

At trial appellant testified she believed she was in a jogging race like the one in the movie "Chariots of Fire." Also, appellant believed she was being followed by a "big green car with a fat lip."

■ As we stated before, at trial five expert medical witnesses testified that appellant was insane at the time of the offense. Dr. William Gilliam, a psychiatrist and member of the medical board responsible for appellant's discharge from the army, found appellant medically unfit because of a condition he labeled as "schizophrenic, chronic, differentiated type." This condition resulted in her being 30% medically disabled. Dr. Paul Mohl, a psychiatrist on the staff at Medical Center Hospital where appellant was brought after her arrest, testified that appellant's thinking was not logical, that she had unrealistic ideas and that she believed herself to be the biblical character "Jacob." He concluded appellant was a psychotic of the schizophrenic type. Dr. James O. Sherman, a psychiatrist employed by Bexar County, administered psychiatric tests and diagnosed appellant as having a schizophrenic disorder of paranoid type. This resulted, Dr. Sherman testified, in appellant not fully appreciating the wrongfulness of her acts or being able to conform her behavior to the standards of law. Dr. John Sparks, another psychiatrist employed by Bexar County, concluded appellant had a schizo-

phrenia of a paranoid type and that, on the date of the offense, she did not know that what she was doing was wrong and was incapable of conforming her conduct to the laws of society. Dr. Franklin Reddman, a private psychiatrist, when asked a hypothetical question based on the facts of the case, concluded that the person described would be unable to tell right from wrong and would be unable to conform her conduct to what was right as a result of her mental disorder. Finally, the prosecutor admitted that a psychiatrist employed by the State, Dr. Clifford Barnhardt, concurred with the defense experts that, on the date of the offense, appellant was suffering from a paranoid schizophrenic condition which was the cause of her not being able to conform her conduct to the requirements of the law. The State produced no rebutting evidence by way of cross or direct examination.

Using the standards set up here in reviewing all the evidence presented concerning insanity we hold that no rational trier of fact could have found that appellant failed to prove her affirmative defense by a preponderance of the evidence.

Accordingly, the judgment of the Court of Appeals reversing the trial court is affirmed.

ONION, P.J., and CLINTON, J., concur in result.

WHITE, J., not participating.

TEAGUE, Judge, concurring.

The State erroneously suggests that regardless of the quality or quantity of credible evidence an accused person presents to the trier of fact to establish an affirmative defense, if the jury finds against him or her, then the reviewing court cannot disturb the jury's finding. This is simply not the law of this State and has never been the law of this State.

The law, however, contrary to the State's assertion, is clear: No matter how reluctant this or any other reviewing court might be to set aside the verdict of a jury,

it will not hesitate to do so when the evidence is found to be insufficient as a matter of law, or when the evidence going to an affirmative defense is established as a matter of law. In that instance, the reviewing court becomes the thirteenth juror with veto power over the trier of fact's verdict.

The record reflects that the appellant was charged with committing five felony offenses (1-murder; 4-attempted murders) that occurred during the same transaction or criminal episode. The jury returned verdicts of not guilty by reason of insanity on the murder charge and not guilty by reason of insanity on three of the attempted murders. Notwithstanding these verdicts, it found the appellant guilty of one of the four attempted murder offenses.

The appellant's defense was that when she committed the offenses she was legally insane. In support of her defense, the appellant presented, in addition to lay testimony, five leading psychiatrists who testified that when appellant committed the offenses she was legally insane. The State did not offer or attempt to introduce any evidence to controvert or rebut the appellant's affirmative defense of insanity, nor did it make any effort through cross-examination to discredit the appellant's expert witnesses.

The majority opinion correctly sustains the holding of the San Antonio Court of Appeals, see *Van Guilder v. State*, 674 S.W.2d 915 (Tex.App.—San Antonio 1984), that appellant established her affirmative defense of insanity as a matter of law.

It is true, of course, that when an accused person presents any affirmative defense, he or she has the burden to establish that defense by a preponderance of the evidence. Once the accused person has satisfied that burden, and the State controverts or rebuts such defense, it then becomes the responsibility of the trier of fact to make the determination whether the accused person established his defense by a preponderance of the evidence. If the evidence is uncontroverted, as it was here, there is nothing for the trier of fact to

decide, and the trial judge should instruct the jury to return a verdict of not guilty because of the uncontradicted and uncontroverted affirmative defense.

Under our present law, the State has no burden to negate or disprove any affirmative defense, such as insanity. Nevertheless, and contrary to what occurred in this cause, it must not sit idle if the accused person presents an affirmative defense by credible evidence.

At least since 1919, when numerous and apparently credible witnesses testify that the accused person is legally insane, and such testimony is not controverted or rebutted by the State, this Court will not allow a conviction to stand. *Kiernan v. State*, 84 Tex.Cr.R. 535, 208 S.W. 518 (Tex. Cr.App.1919). Also see *Gardner v. State*, 85 Tex.Cr.R. 103, 210 S.W. 694 (1919). Cf. *Smith v. State*, 15 Tex.Ct.App. 338 (1884) (defense of self-defense may be established as a matter of law.)

Whether an affirmative defense has been established as a matter of law rests on whether the affirmative defensive evidence or testimony was uncontradicted. In *Pittman v. State*, 140 Tex.Cr.R. 264, 144 S.W.2d 569 (Tex.Cr.App.1940), this Court, speaking through Judge Krueger, stated the following: "It is true the jury convicted the appellant, and their verdict is always respected and upheld by this Court when there is evidence upon which it might have been based; but when the verdict is against the uncontroverted testimony, it is our solemn duty to set it aside."

The court of appeals correctly stated that "Jurors may reject the opinion of experts if it does not comport with their ideas of sound logic ... Jurors are not required to give conclusive effect to the opinion of experts, but they may not arbitrarily disregard such testimony." Thus, when a defendant claims on appeal that he has established an affirmative defense as a matter of law, the question is not how much weight should be given the testimony of the witnesses, for that was the responsibility of the trier of fact; the question, in-

stead, is whether the evidence that was presented established the affirmative defense as a matter of law.

In this instance, there is simply *no testimony*, either medical or lay, from which any rational trier of fact could conclude that the appellant was sane at the time of the offense. It is now axiomatic that a jury that totally disregards credible and uncontradicted evidence cannot be considered to have acted as a rational trier of fact. The due process clause of the Federal Constitution and the due course of law clause of the Texas Constitution forbid any conviction to stand when it is founded upon evidence insufficient to persuade a rational trier of fact of guilt beyond a reasonable doubt. See *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

The majority opinion authored by Judge W.C. Davis correctly sustains the holding of the San Antonio Court of Appeals, see *Van Guilder v. State*, supra, that there is *no evidence* to support the jury's finding that appellant was legally sane at the time she committed the offenses of attempted murder and murder. In sum, "[N]o rational trier of fact could have found [from the evidence that was presented] that appellant failed to prove her affirmative defense [of insanity] by a preponderance of the evidence."

In this instance, because of the quality and quantity of the appellant's evidence, adduced through at least five leading psychiatrists with unimpeachable credibility, and because the State presented absolutely *no evidence* of any kind to rebut or controvert the appellant's affirmative defense of insanity, and no effort was made by the prosecution to lessen the impact of the doctors' testimony through cross-examination, the cases should not have even been submitted to the jury; the trial judge should have instructed the jury to return verdicts of not guilty by reason of insanity on all of the cases.

I concur to the majority opinion affirming the judgment of the court of appeals.