**James Earl BAKER, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 01–84–0028–CR.

Court of Appeals of Texas, Houston (1st Dist.).

April 2, 1987.

Discretionary Review Refused July 22, 1987.

Herb H. Ritchie, Houston, for appellant.

John B. Holmes, Jr., James C. Brough, Casey O'Brien, Harris County Asst. Dist. Attys., Houston, for appellee.

Before JACK SMITH, COHEN and DUGGAN, JJ.

OPINION

DUGGAN, Justice.

A jury found appellant guilty of attempted murder and the court assessed punishment at 10 years confinement. This Court reversed and remanded for a new trial, holding that the jury's implied finding that appellant was not insane was so against the great weight and preponderance of the evidence as to be manifestly unjust. *Baker v. State*, 682 S.W.2d 701 (Tex.App.—Houston [1st Dist.] 1984, pet. granted). In

granting the State's petition for discretionary review, the Court of Criminal Appeals disapproved of this standard of review, reversed the judgment, and remanded the case to this Court to apply the standard set out in *Van Guilder v. State*, 709 S.W.2d 178 (Tex.Crim.App.1985), *cert. denied*, —— U.S. ——, 106 S.Ct. 2891, 90 L.Ed.2d 978 (1986); *Baker v. State*, 707 S.W.2d 893 (Tex.Crim.App.1986).

The standard of review announced in *Van Guilder* is as follows:

> [An appellate court] must review the evidence of the affirmative defense by looking at the evidence in the light most favorable to the implicit finding of the jury with respect to such affirmative defense and then determine, by examining all the evidence concerning the affirmative defense, if any rational trier of fact could have found that the defendant failed to prove his defense by a preponderance of the evidence ... It is important to note that this analysis does not involve the appellate court in any fact finding function. The test evaluates the legal sufficiency of the evidence using a legal standard. There must be no reweighing or reclassifying of the evidence by the appellate court.

*Van Guilder*, 709 S.W.2d at 181.

In *Van Guilder*, the appellant had been convicted on one count of attempted murder and had been found not guilty, by a jury, by reason of insanity on three other counts of attempted murder and one count of murder. The appellate court had reversed the conviction, concluding that the jury's implied finding of sanity was against the great weight and preponderance of the evidence, and that the affirmative defense of insanity had been proven as a matter of law. The Court of Criminal Appeals disapproved of the "great weight and preponderance" standard used by the appellate court, but affirmed the appellate court's judgment. Because the State had offered no evidence whatsoever to rebut the defensive theory of insanity, the Court concluded that no rational trier of fact could have found that appellant failed to prove her

affirmative defense by a preponderance of the evidence.

In determining whether the jury finding was rational, the court wrote, "[W]hen there is evidence on both sides of the insanity issue it is much more difficult in reviewing a case to find that the jury acted irrationally." *Van Guilder*, 709 S.W.2d at 182.

In a more recent case, *Schuessler v. State*, 719 S.W.2d 320 (Tex.Crim.App.1986) (op. on reh'g), the Court of Criminal Appeals reversed the judgment of the appellate court and affirmed the judgment of the trial court, where evidence was presented on both sides of the insanity issue in a murder case.

In *Schuessler*, the appellant was convicted of the murder of his four-year-old daughter. Appellant's three expert witnesses testified that appellant was legally insane, i.e., that he had a serious mental illness to the extent that either he did not know right from wrong or was unable to conform his conduct to the requirements of the law. The testimony of several lay witnesses established that appellant had been taken into custody after chasing another car at high speed with a flat tire. He attempted to give the female driver of the car two stuffed toy animals when she stopped at her father's service station after several miles. Appellant was arrested for driving with an expired license and was taken to the county jail in Snyder, Texas. The arresting officer was told that appellant believed that the stuffed animals were hexed and that the devil had given him a message to give the hexed dolls to the driver of the car he had been chasing.

Appellant later told the arresting officer and another officer that he had killed his daughter. He described the death in terms of a story of a "Black Horse" religion and that he had to kill his daughter to keep the devil from taking her soul. He said that her head kept getting bigger and bigger and her arms and legs smaller. Appellant said he traveled a long way and after making certain she was dead, put the daughter's body out beside the road; he didn't know where he was.

Appellant's brothers subsequently drove appellant to his family's home in Kansas. On the drive, appellant refused to eat, but ate several cigarettes and blistered his lips with burning cigarettes. After the daughter's body was found one mile from a border checkpoint along Interstate 10, appellant was arrested and again taken into custody. The State's lay witnesses, primarily officers who had observed him in confinement prior to trial, testified that appellant did not exhibit any strange behavior.

The State's one expert witness testified that he could not agree with the opinions of the other experts that appellant was insane when he committed the offense. He was unable to say whether appellant was legally insane at any given moment during the month in which the offense was committed.

In holding that a rational trier of fact could have resolved the conflicting testimony on legal insanity against appellant, the court made several observations: 1) the issue of insanity is not strictly a medical one, and expert witnesses are helpful, but cannot dictate the jury's determination of the issue; 2) circumstances of the offense and the defendant's life experiences can be considered in the jury's determination; 3) the jury may resolve conflicts in the testimony of either expert or lay witnesses, being the sole judge of the weight and credibility to be given the evidence; and 4) medical insanity does not necessarily establish legal insanity. *Schuessler*, 719 S.W.2d at 329.

Relying primarily on the testimony of the State's expert witness, who challenged the reliability of retroactive diagnosis, and who pointed out that appellant's disposal of the body near a border checkpoint seemed to indicate that appellant knew right from wrong, the court held that the jury's decision on the sanity issue was not irrational.

In the instant case, appellant was charged with attempted murder after stabbing his 21–year-old brother as he slept on the floor of the family home in front of the television. Appellant left the house, called the Houston Police Department 12 hours later, and surrendered himself to the police in a restaurant parking lot, where he had asked them to meet him.

At trial, the medical records introduced by the defense showed an eight-year course of hospitalization for mental illness. Appellant's caseworker of three-and-a-half years testified that appellant was delusional and subject to hallucinations, but that he had never seen appellant exhibit violence to persons or property, and could not say whether there were occasions when appellant did not know right from wrong. The psychiatrist who examined appellant and reviewed his clinical records testified that, in his opinion, appellant was legally insane at the time of the alleged offense. Another psychiatrist, who had treated appellant one year prior to the stabbing, also testified that he believed appellant was legally insane at the time of the offense.

The testimony of the lay witnesses, appellant's mother, sister, and brother, was set forth in detail in our previous opinion. In summary, the mother's testimony indicated that she believed her son to be legally insane; the brother and sister were unable to say whether appellant knew the difference between right and wrong or could conform his conduct to the law's requirements, at the time of the stabbing.

Four police officers, who had custody of appellant for two to three hours after his arrest, testified that appellant's behavior was normal and unremarkable.

The degree of conflict in the testimony regarding insanity of both the expert and lay witnesses in the instant case closely resembles that shown in *Schuessler*. The facts of the two cases are dissimilar to the extent that appellant, here, had a history of mental illness, and the appellant in *Schuessler* did not. The behavior of the appellant here at the time surrounding the offense was, however, decidedly less bizarre than the behavior of the appellant in *Schuessler*. If a rational trier of fact could have found that the appellant in *Schuessler* had not proven his affirmative defense of insanity by a preponderance of the evidence, we cannot say that the jury's implied finding of sanity in this case was irrational.

In light of *Schuessler* and *Van Guilder,* we hold that a rational trier of fact could have resolved the conflicting testimony on legal insanity against appellant.

Accordingly, the judgment of the trial court is affirmed.